## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| LARRY DOVER, individually and on behalf of all similarly situated persons,<br><br>        Plaintiff,<br><br>v.<br><br>HANCOCK CLAIMS CONSULTANTS, INC.<br><br>        Defendant. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

## COLLECTIVE ACTION COMPLAINT

Plaintiff Larry Dover ("Plaintiff") brings this collective action on behalf of all current or former property and roof insurance claim inspectors ("Inspectors") employed by Defendant Hancock Claims Consultants, Inc. (hereinafter "Defendant" or "HCC") who provided insurance inspection services to Defendant's corporate customers, or materially similar services, and worked in excess of 40 hours per week at any time beginning three (3) years prior to the filing of this Collective Action Complaint to present.  In violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and as a regular and routine practice, Defendant misclassified Plaintiff and other similarly situated persons as independent

contractors, and willfully failed to pay them overtime wages mandated by the FLSA for time worked in excess of 40 hours per workweek. Plaintiff shows the Court as follows:

## NATURE OF THE ACTION

1.    Plaintiff alleges on behalf of himself and other current and former Inspectors, that Defendant applied policies and practices in which Defendant: (a) misclassified Inspectors as independent contractors; (b) encouraged and/or knowingly permitted them to work more than 40 hours per week; and (c) intentionally failed to pay them overtime at one-and-one-half their regular rate for all time worked in excess of 40 hours per workweek.

2.    Plaintiff and other Inspectors who choose to opt into this action pursuant to 29 U.S.C. § 216(b) (the "Collective Action") are, *inter alia*, entitled to: (i) unpaid overtime wages from Defendant for time they worked in excess of 40 hours per week and Defendant failed to pay them at one-and-one half their regular rate; (ii) liquidated damages; (iii) interest; and (iv) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.    Pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction over Plaintiff's FLSA claims.

4.     Pursuant to 28 U.S.C. § 1391 and Local Rule 3.1(B), venue is proper in this Court because the unlawful employment practices described herein were committed within the Atlanta Division of the Northern District of Georgia.

## PARTIES

5.     Plaintiff is a citizen of the United States of America and a resident of the State of Georgia.

6.     Plaintiff worked for Defendant as an insurance claims inspector from approximately October 2014 until March 30, 2021.

7.     Plaintiff was assigned to Defendant's Alpharetta, Georgia location.

8.     Defendant HCC is a Georgia corporation with its principal place of business at 6875 Shiloh Rd E, Alpharetta, Georgia, 30005.  Defendant regularly does business in the Atlanta Division of the Northern District of Georgia.

9.     Defendant HCC may be served with process through, *inter alia*, its Registered Agent, Brad Hancock, at 6875 Shiloh Road East, Alpharetta, GA 30005.

10.    At all relevant times, Defendant has been and continues to be, an "employer" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 201 *et seq*.

11.    At all relevant times, Defendant has been, and continues to be, an "enterprise engaged in commerce or in the production of goods for commerce,"

within the meaning of 29 U.S.C. § 203(s)(1)(A) because it "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person."

12.    At all relevant times, in the course of Defendant's business operations, Defendant's employees, including Plaintiff, have handled or otherwise used materials that have been moved or produced in interstate commerce.

13.    At all relevant times, Defendant has had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

14.    On information and belief, at all relevant times, Defendant has had an annual gross volume of sales made or business done in excess of $500,000.

15.    At all relevant times, Defendant has had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

16.    At all relevant times, Defendant was and continues to be, an "employer" of Plaintiff and other similarly situated persons as that term is defined by 29 U.S.C. § 203(d).

17.    Defendant is governed by and subject to 29 U.S.C. § 207.

18.     Defendant was Plaintiff's "employer," and the "employer" of other Inspectors under the FLSA at all times relevant to this Complaint.

19.     Plaintiff was Defendant's "employee" within the definition of the FLSA at all times relevant to this Complaint.

## COLLECTIVE ACTION ALLEGATIONS

20.     Plaintiff brings this action on behalf of himself, and all other similarly situated persons, pursuant to 29 U.S.C. § 216(b).

21.     Plaintiff and those similarly situated are persons who were, or are employed by Defendant as insurance claims inspectors – or performing materially similar work as insurance claim inspectors – and worked in excess of forty (40) hours per week at any time within three years prior to the filing of this Collective Action Complaint to present without being paid overtime at the required rate (hereinafter the "FLSA Collective").

22.     Most of the members of the FLSA Collective would not be likely to file individual suits because they lack knowledge of their claims, adequate financial resources, and/or access to attorneys.

23.     Plaintiff will fairly and adequately protect the interests of the members of the FLSA Collective and has retained counsel who is experienced and competent in the fields of wage and hour law and collective action litigation.

24.     Questions of law and fact common to the members of the FLSA Collective predominate over questions that may affect only individual members because Defendant has acted on grounds generally applicable to all members of the FLSA Collective.

## STATEMENT OF FACTS

25.     Plaintiff began working for Defendant on or around October 2014.

26.     Defendant currently offers roof and property evaluations to corporate clients, providing them with direct inspections.

27.     Plaintiff worked for Defendant as an Inspector from approximately October 2014, until March 30, 2021.

28.     The job duties of Defendant's Inspectors, including Plaintiff, included setting up inspection appointments with adjusters, driving to inspection sites, taking photographs of roof or property damage at each site, generating a diagram of each site, and completing a standard "property inspection form" provided by Defendant after visiting each site.

29.     As a policy and practice, Defendant hired these Inspectors as "independent contractors" using a form contract entitled "Independent Contractor Agreement" (hereinafter the "Agreement"). This Agreement is attached hereto as "Exhibit A."

30.    Defendant hires Inspectors and willfully misclassifies them as independent contractors (hereinafter the "Inspectors").

31.    Inspectors are an integral part of Defendant's business operations; without Inspectors, Defendant could not provide roof and property inspection services to their clients.

32.    Defendant's Agreement purports to allow Inspectors substantially more discretion and decision-making authority than Defendant actually allows in practice.

33.    Additionally, Defendant's Agreement includes a provision entitled "Noncompetition and Nonsolicitation of Customers" which prevents Inspectors from providing the same services to a competitor.

34.    Defendant's Agreement also requires Inspectors to devote their "time, energy, and skill as is necessary" to fulfill their contractual duties and requires Inspectors "occasionally, or by the request of Hancock" submit logs of how much time is expended and needed to complete their tasks.

35.    Additionally, Defendant was completely in control of approving or denying any request by an Inspector for assistance if an Inspector believed that they needed more time to complete their assignments from Defendant.

36.     In reality, Defendant determined how much time was needed to perform the work Defendant assigned by providing Plaintiff and other Inspectors with inspections that could only be completed within a limited time period.

37.     Defendant's Agreement also includes a provision entitled "Income Tax Designation" in the event that the IRS classifies the contractor as an employee.

38.     Defendant's Agreement also includes a provision entitled "Work Product Assignment" which enforces property rights over any work product made by the contractor "whether or not during normal business hours."

39.     On information and belief, Defendant classifies Inspectors as independent contractors so as to, *inter alia*, attempt to avoid the FLSA's compensation requirements.

40.     Defendant unilaterally sets training requirements when hiring Inspectors, which includes mandating a month-long training period and a Haag certification process for residential roof inspection within a year of signing Defendant's Agreement.

41.     During the training period, Defendant requires prospective hires to travel and observe existing Inspectors as they perform their inspections.

42.     Defendant does not pay prospective hires for this initial training requirement.

43.     Defendant compensates prospective Inspectors for only half of the cost of Haag certification required by their training protocols.

44.     Inspectors, including Plaintiff, were, and continue to be, hired for full-time employment and are required to work schedules set by Defendant.

45.     During his employment, Plaintiff typically worked six (6) to seven (7) days a week and ten (10) to twelve (12) hours each day that he worked.

46.     On weeks that Plaintiff worked six (6) days, he would typically work over sixty (60) hours, or between sixty (60) and seventy-two (72) hours that week.

47.     On weeks that Plaintiff worked seven (7) days, he would typically work over seventy (70) hours, or between seventy (70) and seventy-two (84) hours that week.

48.     Around 6:30-7:30 P.M. the night before work, Defendant would assign Plaintiff different locations to visit the next day for roof inspections.

49.     Defendant required Plaintiff to call each adjuster that night to confirm the appointment for the next day.

50.     Plaintiff frequently began travelling and site inspections around 7:30 A.M. each morning of work.

51.    If Defendant accidentally double-booked Plaintiff for an inspection, Plaintiff was prohibited from informing the client that it was Defendant's mistake, and was required to blame himself for the error instead.

52.    Defendant required Plaintiff to pay for his own travel expenses, including car maintenance, gasoline, and tolls.

53.    Defendant would occasionally compensate Plaintiff for hotel expenses when performing inspections out of town.

54.    Sometimes, these job sites were considerably spread out geographically, incurring additional travel costs on Plaintiff.

55.    If an Inspector declined any of these insurance evaluation requests, Defendant would chastise and punish that Inspector, by reducing their inspections, completely discontinuing their inspections, or assigning them inspections that were exceedingly spread out to cause them to incur substantially higher travel time and costs.

56.    As a result, many Inspectors would frequently visit sites against their own personal financial interests to maintain their working relationship with Defendant.

57.     Given the nature of the mandatory non-compete clause in the Agreement, Plaintiff was concerned that declining any inspections would reduce or prevent him from earning money in his field.

58.     As a result, Plaintiff was forced to accept Defendant's assignments that were against his own financial interest in order to remain employed by Defendant.

59.     If Inspectors, including Plaintiff, wished to take vacation time, they would need to submit a request for approval or denial to Defendant.

60.     If Inspectors were overloaded with job sites at any given time, they were required to request assistance with their workload, which Defendant could approve or deny.

61.     Defendant compensated Plaintiff based on each site he inspected, providing him with eighty-five dollars ($85.00) per regular inspection or one hundred dollars ($100.00) per inspection where the adjuster was not on-site.

62.     Defendant set these rates unilaterally and left no opportunity for Plaintiff to negotiate them.

63.     Upon information and belief, Defendant also set similar rates for all Inspectors, who also had no opportunity to negotiate.

64.     Plaintiff was also minimally compensated for any tarp or tree removal on these sites when necessary, although the rates for compensation were inconsistent.

65.     Plaintiff was not compensated for, but required to perform, training to new prospective Inspectors.

66.     Defendant required to wear khaki pants and company shirt, or other clothes that bore the company logo, such as a company jacket or company hat.

67.     The company shirts, jackets, and hats were all provided by Defendant.

68.     If any Inspectors, including Plaintiff, were ever seen out of uniform, they would be reprimanded by Defendant, sometimes publicly in the Defendant's "Group-Me" social media thread with other Inspectors.

69.     Additionally, Defendant required Plaintiff to place the company logo on his personal truck.

70.     Plaintiff was required to perform his job duties on a tablet provided by Defendant, including property inspection forms, diagrams, and pictures taken on site.

71.     The inspection forms were generated and provided by Defendant; Defendant's forms required information regarding specific damages to the property.

72.    In or around Summer of 2020, Defendant began requiring Inspectors to perform property inspections as well as roof inspections.

73.    These property inspections varied and could consist of interior property damage, exterior property damage, or mobile home property damage.

74.    Plaintiff had no opportunity to negotiate this change and additional duty.   Defendant unilaterally imposed the additional duty on Plaintiff and, on information and belief, other Inspectors.

75.    At this time, Plaintiff was only Haag certified for roof evaluation and had only received training regarding roof inspections.

76.    At this time, Plaintiff was not trained nor certified to perform inspections for internal, external, or mobile home property damage.

77.    Inspectors are required upon hire to have personal commercial insurance for their inspections.

78.    Since Plaintiff was self-insured, Plaintiff became concerned about his proficiency and ability to provide adequate evaluations, including property inspection forms, diagrams, and proper photographs of the damage.

79.    When Plaintiff expressed these concerns to Defendant, he was informed that there was nothing they could do and that this additional duty was now a part of Defendant's business model.

80.     The Agreement set a one-year term for the engagement, with automatic renewal of successive one-year terms if neither party terminated the contract.

81.     Concerned about the liability stemming from these new property inspections, Plaintiff submitted his resignation to Defendant in April of 2021.

82.     On information and belief, Defendant's other Inspectors regularly worked, and continue to work, well in excess of 40 hours per workweek during the relevant time period.

83.     Defendant knew or should have known that Plaintiff and other Inspectors regularly worked well in excess of 40 hours per workweek.

84.     Defendant regularly, and as a routine policy and practice, paid Plaintiff and other Inspectors a flat rate per inspection and failed to pay them at the overtime rate of one-and-one-half their regular rate of pay for all time worked in excess of forty (40) hours per workweek.

85.     Each and every week that Plaintiff worked six (6) to seven (7) days in a week, which were the vast majority of her workweeks with Defendant, he worked in excess of forty (40) hours per workweek.

86.     Each and every week that Plaintiff worked six (6) to seven (7) days in a week, which were the vast majority of his workweeks with Defendant, Defendant

failed to pay Plaintiff overtime wages for time worked in excess of 40 hours per week.

87.     On information and belief, Defendant's unlawful conduct described herein is pursuant to a policy or practice of minimizing labor costs by violating the FLSA.

88.     Defendant was, or should have been, aware that the FLSA requires it to pay non-exempt employees overtime wages at a rate of one-and-one-half their regular rate of pay for all time worked in excess of 40 hours per workweek.

89.     Defendant's failure to pay Plaintiff and other Inspectors overtime wages at the rate required by the FLSA for all time worked in excess of 40 hours per workweek was willful and was not in good faith.

90.     As a result of the unlawful acts of Defendant, Plaintiff and members of the FLSA Collective have been deprived of overtime wages in an amount to be determined at trial for all time worked in excess of 40 hours per workweek, and are entitled to recovery of such amounts, liquidated damages, interest, attorneys' fees and costs.

91.     Plaintiff is entitled to lost wages, liquidation damages, interest, and expenses of litigation, including reasonable attorneys' fees and costs.

**COUNT ONE**
**(Individual FLSA Claim Asserted by Plaintiff)**
**Willful Failure to Pay Overtime Wages in Violation of the FLSA**

92.     At all relevant times, Defendant has been, and continues to be, an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A) because it "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person."

93.     On information and belief, at all relevant times, Defendant has had an annual gross volume of sales made or business done in excess of $500,000.

94.     At all relevant times, Defendant had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

95.     At all relevant times, Defendant was an "employer" of Plaintiff and other similarly situated persons as that term is defined by 29 U.S.C. § 203(d).

96.     Defendant is governed by and subject to 29 U.S.C. § 207.

97.     The overtime wage provisions set forth in the FLSA apply to Defendant and protect Plaintiff.

98.     Plaintiff regularly worked well in excess of 40 hours per week.

99.   During weeks that Plaintiff was scheduled to work six (6) days, he worked sixty (60) or more hours per workweek.

100.   During weeks that Plaintiff was scheduled to work seven (7) days, he worked seventy (70) or more hours per workweek.

101.   Although Defendant misclassified Plaintiff as an independent contractor, in actuality, he was an employee within the meaning of the FLSA.

102.   Plaintiff was not exempt from the FLSA under any recognized exemption.

103.   The FLSA requires employers, such as Defendant, to compensate non-exempt employees, such as Plaintiff, at a rate of one-and-one-half their regular rate of pay for all time worked in excess of 40 hours per week.

104.   Defendant willfully failed to pay Plaintiff overtime wages at one-and-one-half his regular rate for all time he worked in excess of 40 hours per workweek.

105.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

106.   Defendant did not make a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

107.   Due to Defendant's FLSA violations, Plaintiff is entitled to recover from Defendant (a) unpaid overtime wages for each workweek within the limitations period; (b) an additional and equal amount of liquidated damages for Defendant's violations of the FLSA; (c) interest; and (d) reasonable attorneys' fees and costs of litigation.

**COUNT TWO**
**(Collective FLSA Claim)**
**Willful Failure to Pay Overtime Wages in Violation of the FLSA**

108.   Plaintiff seeks to represent the following collective group of non-exempt employees who Defendant failed to pay all overtime wages due:

> All employees who worked for Defendant as Property and Roof Inspectors or similar positions and worked in excess of 40 hours per week within the three years prior to the filing of this Complaint without being paid overtime at the required rate.

This is the "FLSA Collective."

109.   At all relevant times, Defendant has been, and continues to be, an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A) because it "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person."

18

110.   On information and belief, at all relevant times, Defendant has had an annual gross volume of sales made or business done in excess of $500,000.

111.   At all relevant times, Defendant had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

112.   At all relevant times, Defendant was an "employer" of Plaintiff and other similarly situated persons as that term is defined by 29 U.S.C. § 203(d).

113.   Defendant is governed by and subject to 29 U.S.C. § 207.

114.   The overtime wage provisions set forth in the FLSA apply to Defendant and protect Plaintiff and the FLSA Collective.

115.   Defendant misclassified Plaintiff and members of the FLSA Collective as independent contractors when, in actuality, they were employees within the meaning of the FLSA.

116.   Plaintiff and members of the FLSA Collective were not exempt from the FLSA under any recognized exemption.

117.   The FLSA requires employers, such as Defendant, to compensate non-exempt employees such as Plaintiff and members of the FLSA Collective at a rate of one-and-one-half the regular rate of pay for all hours worked in excess of 40 in each workweek.

118.   As a regular and routine practice, Defendant required Plaintiff and members of the FLSA Collective to work substantially more than 40 hours per workweek.

119.   Defendant regularly, and as a routine policy and practice, failed to pay Plaintiff and members of the FLSA Collective at the overtime rate of one-and-one-half their regular rate of pay for all time worked in excess of 40 hours per workweek.

120.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

121.   Defendant did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff and members of the FLSA Collective.

122.   Defendant is liable to Plaintiff and members of the FLSA Collective for (a) unpaid overtime wages for each workweek within the limitations period; (b) an additional and equal amount of liquidated damages for Defendant's violations of the FLSA; (c) interest; and (d) reasonable attorneys' fees and costs of litigation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and all members of the FLSA Collective who join this action demand a **TRIAL BY JURY** and entry of a judgment granting the following relief:

a)      Designation of this action as a collective action and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated persons employed by Defendant during the relevant time period, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Join pursuant to 29 U.S.C. § 216(b) and tolling of the statute of limitations;

b)      A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

c)      An award of unpaid overtime wages due under the FLSA;

d)      An award of liquidated damages as a result of Defendant's failure to pay overtime wages;

e)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

f)      Such other and further relief as this Court deems just and proper.

Dated this 16th day of August 2021.

Respectfully submitted,

*/s/ Justin M. Scott*
Justin M. Scott
Georgia Bar No. 557463
Michael D. Forrest
Georgia Bar No. 974300
SCOTT EMPLOYMENT LAW, P.C.
160 Clairemont Avenue, Suite 610
Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@scottemploymentlaw.com
mforrest@scottemploymentlaw.com


/s/ Cullen Hamelin
JONATHAN A. STREET*
Tennessee Bar No. 021712
CULLEN HAMELIN*
Tennessee Bar No. 037317
1720 West End Ave, Suite 402
Nashville, TN 37203
(615) 850-0632
street@eclaw.com
chamelin@eclaw.com

*Attorneys for Plaintiff*
*\*Seeking Pro Hac Vice Admission*